IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA ANDERSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:26-cv-00073-RAH-JTA |
| | ) | |
| NEWREZ LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing's ("Newrez") *Motion to Dismiss First Amended Complaint* (doc. 40), filed April 24, 2026. Because matters outside the pleadings have been presented and not excluded, the Court, pursuant to Federal Rule of Civil Procedure 12(d), has converted the motion to one for summary judgment under Rule 56. (*See* doc. 43.) The parties have had a reasonable opportunity to present all material pertinent to the motion. For the reasons stated below, the motion is due to be granted.

## LEGAL STANDARD

### A.   Conversion Under Rule 12(d)

Federal Rule of Civil Procedure 12(d) provides that if, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1267 (11th Cir. 2002); Fed. R. Civ. P. 12(d)). The Court has discretion to convert when the parties have constructive

notice of the possibility of conversion and the record is sufficiently developed. *Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531–32 (11th Cir. 1990).

Here, both parties have submitted extensive exhibits central to the claims, including deed records, the foreclosure deed, the state-court injunction, USPS delivery confirmations, the underlying mortgage, the assignment of mortgage, the divorce decree, the Corrective Warranty Deed, the Certification of Trust, and numerous written communications and affidavits. These materials are not merely referenced in the First Amended Complaint but are fundamental to many of their arguments. Accordingly, conversion is appropriate.

**B.    Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view all facts and draw all reasonable inferences in favor of the nonmoving party. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, a mere "scintilla of evidence" does not create a genuine dispute; the nonmoving party must present "significant probative evidence" sufficient to support a jury verdict in her favor. *Id.* at 249–51.

Pro se filings are construed liberally, *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998), but a pro se litigant is not excused from complying with applicable law and procedural rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

## BACKGROUND

Based on the record as a whole, the following facts are not in general dispute:

Melissa Andersen and Joseph Sebesta were formerly married but divorced on February 25, 2016, by decree of the District Court of Douglas County, Colorado. (Doc. 41-4.)

On November 3, 2021, Sebesta, a single person, executed a note and mortgage in favor of MERS, as nominee for Florida Capital Bank, N.A., in the amount of $1,400,000, secured by the real property located at 594 Amber Drive, Jackson's Gap, Alabama (the "Property"), which Sebesta was purchasing from Steven Christopher and Kelly Ann Barnes. (Docs. 41-1; 41-2; 44-8 at 5-9.) In connection with the purchase transaction, the Barneses executed a Warranty Deed to Sebesta. (Doc. 41-1.) Andersen was not named as a grantee on the deed.

On April 24, 2023, a Corrective Warranty Deed purportedly was executed by Sebesta and Andersen, as wife, conveying the Property to "The Silver Lining Securities Trust, by Declaration of Trust dated December 11, 2018."[1] (Doc. 41-5.) Although Andersen has not filed a copy of any trust document showing her as a beneficiary, Andersen has filed the "Certification of Trust" that identifies Andersen as both the "Grantor" and "Trustee" of The Silver Lining Securities Trust ("the Trust") and states that title to trust property shall be held in the name of the Trust. (Doc. 44-2.)

On July 24, 2025, Sebesta's mortgage was assigned from MERS to Newrez, which does business as Shellpoint Mortgage Servicing. (Doc. 41-3.)

On November 7, 2025, Andersen filed a declaratory judgment lawsuit against Sebesta in the Circuit Court of Tallapoosa County, Alabama, seeking a declaration

---

[1] The Complaint identifies Andersen as the plaintiff. The Complaint does not identify the Trust as a plaintiff, although in other filings Andersen claims that she is also the plaintiff in her capacity as the trustee of the Trust (doc. 44-13).  To the extent she is attempting to advance claims on behalf of the Trust, she cannot do so as the Trust is not a party. And to the extent it is a party, Andersen cannot represent the Trust pro se.

that Sebesta "has no ownership, possessory, or equitable interest" in the Property and that Andersen, through the Trust, is the "lawful and sole owner." (Doc. 1-1, at 29-31.) According to Andersen, she and Sebesta had an agreement that Andersen would assume the loan in her own name following the purchase transaction but that Sebesta subsequently refused to follow through with the transfer.[2] Nevertheless, Andersen has continued as the sole payor and occupant of the Property.

According to Andersen, in 2025, she submitted correspondence and notices to Newrez that made various requests of Newrez. For example, on February 15, 2025, she submitted a written Notice of Error (NOE) and Request for Information (RFI) to Newrez's designated address.[3] (Doc. 39-2 at 2.) In this submission, Andersen submitted a loss mitigation application and a NOE directed to previous requests that she had made to be recognized as a successor in interest in the Property and that Newrez engage in loss mitigation with her. (Doc. 44-4.)

Andersen submitted another package of documents to Newrez in August. In her August 12, 2025, submission, Andersen complained that Newrez had failed to respond to her previous NOEs and RFIs, that Newrez had failed to comply with its successor-in-interest obligations, that Newrez had failed to properly handle her loss mitigation requests, and that Newrez was improperly dual tracking. (Doc. 39-4 at 9-10.) On that same date, Andersen again requested to be confirmed as the successor in interest on the loan (doc. 39-4 at 11-13) and that she be considered for loss mitigation (*id*. at 15).

---

[2] During oral argument in this matter, counsel for Newrez stated that Sebesta has refused to authorize Newrez to communicate with Andersen about Sebesta's loan.

[3] A qualified written request (QWR), or RFI, is a formal written letter to the loan servicer that demands account information, while a NOE is a formal written letter that identifies servicing errors.

4

On October 20, 2025, Andersen sent another letter to Newrez that she labeled a QWR and NOE. (Doc. 39-4 at 16-19.) In this letter, Andersen notified Newrez of improper interference by Sebesta, claimed that she was the trustee and executor of the Trust, which she alleged was the deeded owner of the Property, insisted that Newrez change its records and payor information to the Trust, asserted that Newrez should recognize her as the confirmed successor in interest, that her loss mitigation package should be considered, and that any foreclosure activity cease. (*Id*. at 16-20.)

At some point in mid-2025, the loan went into a default status due to nonpayment. (*See* doc. 44-8 at 95.) Newrez began foreclosure proceedings and published a foreclosure date of December 19, 2025 at the steps of the Tallapoosa County Courthouse. In an effort to stop the looming foreclosure, on December 15, 2025, Andersen submitted another loss mitigation application and made additional written demands to Newrez. (Doc. 1-1 at 18-22; doc. 38 at 3.)

On the day of the foreclosure, at 2:48 p.m., Andersen sued Newrez in the Circuit Court of Tallapoosa County, Alabama, under a pleading styled, *Verified Emergency Motion For Temporary Restraining Order And Preliminary Injunction,* and sought to enjoin the foreclosure set for that afternoon. (Doc. 1-1.) At some point that afternoon, the Circuit Court of Tallapoosa County e-signed a one-sentence order stating: "MOTION FOR PRELIMINARY INJUNCTION filed by ANDERSEN MELISSA is hereby GRANTED. The injunction shall remain in full force and effect until the hearing set on January 12, 2026." (Doc. 14 at 15; doc. 44-11.) The order did not describe the acts restrained, did not set forth reasons for issuance, did not require a security bond, and was entered without notice to Newrez.[4]

The foreclosure went forward as scheduled on December 19, 2025, at the steps of the Tallapoosa County Courthouse in Dadeville. No third-party bid on the

---

[4] The state-court docket makes no mention of a temporary restraining order being entered, only that a preliminary injunction was entered, sometime around 6:14 p.m. that day.  (Doc. 1-1 at 5.)

Property, although Newrez claims that it opened the bidding at 2:50 p.m. by making a full credit bid for the entire indebtedness. (Doc. 45-1.) Andersen claims that neither she nor her representatives heard the auctioneer announce that the Property had been sold or otherwise close the bidding. (Doc. 52.)

The Foreclosure Deed, executed on December 30, 2025, and recorded on December 31, 2025, recites that on December 19, 2025, Newrez became the purchaser of the Property at public outcry for the sum of $1,344,973.47. (Doc. 41-6.)

## DISCUSSION

Through the Amended Complaint, Andersen brings federal claims under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq*. and 12 C.F.R. § 1024 (Regulation X), and state-law claims for declaratory and injunctive relief. Newrez moves to dismiss them all, largely for failures to state a claim upon which relief can be granted.

## RESPA and Regulation X

In her Amended Complaint, Andersen alleges that Newrez violated RESPA and Regulation X by failing to timely acknowledge and respond to her February and August correspondences, failing to conduct a reasonable investigation of her loan servicing complaints, failing to provide confirmation instructions under 12 C.F.R. § 1024.36(i), failing to properly evaluate her for loss mitigation, and improperly advancing foreclosure activities while federal protections were active. She further claims these violations are actionable under 12 U.S.C. § 2605(f) and § 2605(k)(1)(E), although she is not the borrower on the loan and is not the owner of the Property. Newrez argues that all of these claims are due to be dismissed because Andersen is not the borrower and is not a confirmed successor in interest and therefore lacks the ability to invoke RESPA and Regulation X.

Regulation X, implementing RESPA, extends borrower protections to certain non-borrowers, labeled as "confirmed successors in interest." To be recognized as a successor in interest, the proposed successor's status must be confirmed by the loan servicer, which includes confirmation of the successor's identity and ownership interest in the property. 12 C.F.R. § 1024.31. Only "confirmed" successors in interest are considered "borrowers" entitled to bring claims under RESPA and Regulation X. *See* 12 C.F.R. § 1024.30(d); *Johnson v. Ocwen Loan Servicing*, 374 F. App'x 868, 873–874 (11th Cir. 2010) (applying standing principles); *Est. of Burpo v. Specialized Loan Servicing, LLC*, No. 2:23-cv-01189, 2025 WL 949108, at *5 (N.D. Ala. Mar. 28, 2025) (same); *Walker v. PHH Mortg. Corp.*, No. 22-cv-23276, 2023 WL 1778514, at *5 (S.D. Fla. Feb. 6, 2023) (same). A party cannot achieve confirmed successor-in-interest status absent unambiguous validation from the mortgage servicer. *See, e.g.*, *Mauk v. Nationstar Mortg., LLC*, No. 5:25-CV-00630, 2025 WL 3041845, at *6 (N.D. Ohio Oct. 31, 2025).

Here, Andersen certainly is not a confirmed successor in interest. *Lau v. Specialized Loan Servicing, LLC*, No. 23 CIV. 1385, 2025 WL 647967, at *4 (S.D.N.Y. Feb. 28, 2025); *Kammerer v. PennyMac Loan Servs. LLC.*, No. CV-24-00437, 2025 WL 3041894, at *6 (D. Ariz. Oct. 31, 2025); *Parsley v. Rushmore Loan Mgmt. Servs. LLC.*, No. 3:23-0525, 2024 WL 712873, at *5 (S.D.W. Va. Feb. 21, 2024); *Mauk*, 2025 WL 3041845, at *6–8. Andersen admits as much.

Nor is she the current titled owner of the Property, as that distinction is held by the Trust. Instead, Andersen argues that she qualifies as a successor because she is a trustee and beneficiary of the Trust. It is true that Regulation X speaks to trust situations where a trust is conveyed property from a borrower. But Regulation X requires that "the borrower is and remains a beneficiary and [the conveyance] does not relate to a transfer of rights of occupancy." 12 C.F.R. § 1024.31. And here, Andersen is not the borrower or an express beneficiary under the Trust, at least

7

according to the documents that Andersen has submitted, and Andersen's submissions show that the conveyance of the Property to the Trust transferred rights of occupancy from Sebesta (who was the borrower) to Andersen. (Doc. 38 at 1; doc. 1-1 at 30.) Under the plain language of 12 C.F.R. § 1024.31, a trust transfer that changes occupancy rights does not qualify as a successor-in-interest conveyance. That deficiency, plus the fact that Andersen has never been the borrower, renders her trust beneficiary argument without merit.

Andersen also alleges that Newrez violated Regulation X (particularly § 1024.36(i)) by failing to provide her with a written description of the documents needed to confirm her successor-in-interest status. Newrez argues that there is no private right of action for such a claimed violation, as the ability to enforce violations is vested solely in the Consumer Financial Protection Bureau. And that appears correct, as "The Bureau and other Federal and State agencies will review servicers' compliance with respect to potential successors in interest through the agencies' supervision and enforcement authority." 81 Fed. Reg. 72175 (Oct. 19, 2016). Other federal courts have held as much. *Est. of Burpo*, 2025 WL 949108, at *5–6; *Mauk*, 2025 WL 3041845, at *6; *Kamara v. Selene Fin., LP*, No. 1:25-cv-611, 2026 WL 767684, at *4 (E.D. Va. Mar. 18, 2026); *Kammerer*, 2025 WL 3041894, at *6. Nowhere does the regulation state that an individual is entitled to enforce a violation through a private cause of action. And the fact that one mechanism of enforcement is provided without expressly providing for another shows that no private right of action was intended here. *See Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979) ("Obviously . . . when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly."); *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) ("[W]here Congress includes particular language in one

section of a statute but omits it in another . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation omitted).

Accordingly, Andersen's claims under RESPA and Regulation X (Count I) and any dependent and related declaratory judgment and injunctive relief claims (Counts II and III) fail and are due to be dismissed.

## State Law Claims

As to Andersen's state law claims, which all turn on the legality of the foreclosure, Newrez raises a standing concern. That is, whether Andersen—who is neither the borrower nor a party to the mortgage or the Foreclosure Deed—may challenge the foreclosure sale at all. She may not in her individual capacity, and that furnishes sufficient grounds for summary judgment on all of her state-law claims.

Alabama's power-of-sale foreclosure is a creature of contract and statute, and the right to attack the regularity of such a sale generally belongs to the mortgagor or those in direct privity with the mortgagor. The presumption of validity that attaches to the recitals in a foreclosure deed is itself framed in those terms: the recitals are prima facie evidence of a valid foreclosure "as against the mortgagor and his privies." *Miller v. Faust*, 26 So. 2d 908, 910 (Ala. 1946). Consistent with that framing, Alabama channels the interests of non-mortgagors affected by a foreclosure—spouses, heirs, and junior lienholders among them—into a defined statutory right of redemption rather than an at-large right to set the sale aside. *See* Ala. Code §§ 6-5-247–6-5-248 (enumerating who may redeem). A stranger to the mortgage and the Property—one who is neither the mortgagor, nor a party to the secured debt, nor a successor to the mortgagor's title—is not among those entitled to attack the conduct of the foreclosure sale. *See Johnson*, 374 F. App'x at 873–74 (affirming dismissal of claims by daughter of borrower for lack of Article III and prudential standing).

Andersen is a stranger in her individual capacity. She is not the borrower, as Sebesta alone executed the note and mortgage. She is not, and has never been, a recorded titleholder of the Property individually, as the Barnes conveyed title to Sebesta, and Sebesta (joined by Andersen)[5] conveyed the Property to the Trust. And, as explained above, she is not a confirmed successor in interest, nor is she identified as a beneficiary in the only trust instrument she has placed in the record.

That the ownership interest resided in the Trust at the time of the foreclosure does not supply the missing standing because Andersen litigates in her individual capacity and pro se. A trust is a separate legal entity that must appear through licensed counsel. An individual proceeding pro se may represent only herself, not the trust. 28 U.S.C. § 1654; *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201–02 (1993); *J.J. Rissell, Allentown, PA Tr. v. Marchelos*, 976 F.3d 1233, 1236 (11th Cir. 2020). As the Court has already observed, to the extent Andersen seeks to advance claims on behalf of the Trust, she cannot do so because the Trust is not a party, and to the extent the Trust is a party, she cannot represent it pro se. The Trust's potential standing to challenge the sale is thus not before the Court.

Andersen's remaining individual interests do not fill the gap. Her status as occupant of the Property does not make her a party to the mortgage or a successor to the mortgagor's title, and it does not authorize her to attack the regularity of a power-of-sale foreclosure. Her asserted mechanic's lien, even if perfected and of record, would at most make her a lienholder whose remedy exists in the statutory right of redemption, a remedy that presupposes a valid sale rather than one that undoes it. *See* Ala. Code § 6-5-248. Neither interest confers standing to litigate the manner or timing of the foreclosure.

---

[5] No explanation is provided why Andersen was included on the conveyance to the Trust. Perhaps it was intended to address any perceived homestead interest that Andersen may have held as the spouse of Sebesta, although the two were divorced at the time of the conveyance.

10

For these reasons, Andersen lacks standing in her individual capacity to challenge the foreclosure sale, and her state-law claims fail on that independent ground.

### Declaratory and Injunctive Relief

Because Andersen's federal and state-law claims fail, her claims for declaratory and injunctive relief likewise fail. Declaratory relief is not an independent source of jurisdiction and requires a viable underlying claim. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *Patel v. Hamilton Med. Ctr., Inc.*, 967 F.3d 1190, 1194 (11th Cir. 2020). An injunction is a form of relief, not a cause of action. *Spearman v. Wyndham Vacation Resorts, Inc.*, 69 F. Supp. 3d 1273, 1292 (N.D. Ala. 2014); *Goodreau v. US Bank Tr. Nat'l Ass'n*, No. 2:19-CV-00269, 2021 WL 6197821, at *7 (N.D. Ala. Dec. 30, 2021). Summary judgment is granted on these claims.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. Defendant Newrez LLC d/b/a Shellpoint Mortgage Servicing's *Motion to Dismiss* (doc. 40), converted to a Motion for Summary Judgment under Federal Rule of Civil Procedure 12(d) and Rule 56, is **GRANTED**;

2. Plaintiff Melissa Andersen's claims against Newrez LLC d/b/a Shellpoint Mortgage Servicing are **DISMISSED WITH PREJUDICE**;

3. Since Defendant Padgett Law Group has not been served in this case—and even if it had, the claims against it would be dismissed for the same reasons the claims against Newrez are being dismissed—the claims against Padgett Law Group are **DISMISSED** without prejudice; and,

4. A separate judgment will issue.

**DONE** and **ORDERED** on this the 20th day of July 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE